Mr. McAllister, welcome back. Thank you, John. This panel looks vaguely familiar. You look vaguely familiar, too. Mr. Chief Judge, and may it please the Court, I'm Steve McAllister, the U.S. Attorney for the District of Kansas, here arguing on behalf of the United States. We recognize that the standard of review on our, excuse me, our issue on appeal is abuse of discretion, but the District Judge here abused his discretion for several reasons in adopting a probation sentence in a child pornography case where the defendant had thousands of images, used sophisticated means to hide his identity, to cover his tracks. He was looking at prepubescent children, images of bondage and sediment, masochistic images. There was no dispute in the District Court about the guidelines calculations, which gave a range of 97 to 121 months. The District Judge somehow ended up with probation as his ultimate sentence. That was erroneous and abuse of discretion for at least three reasons. We're not here making any kind of a procedural argument. This is a substantive reasonableness challenge. District Judge put his reasons on the record, did the calculations, so that's all fine. But one thing he relied on when he pivoted on this one is a factual premise after the defendant got up and spoke that the defendant had extraordinary rehabilitation. Defendant himself said he'd been sober since 2015. This hearing is taking place in the first part of 2018. That simply was not true, as the government attempted to point out to the judge. These are not in the appellate appendix, but they are in the record. If you look at documents 20, 26 and 27 in the record, defendant did have his bond revoked in October of 2017, and the reason was problems with testing positive for cocaine use in September of 2017. He simply was not sober for three years leading up to this sentencing hearing. The District Court at one point in the hearing says to the defense attorney, I've heard all this, I've heard nothing the defense attorney said after that point in the hearing was new. Well, we know that the defendant allocated, right? Defendant allocated, but the defendant did not offer anything other than the erroneous statement that he'd been sober since 2015. That was different than what was in the sentencing memorandum, the pre-sentencing report. Well, about a year ago in Bustamante Conscious, didn't we say that there are a lot of indications that district judges around the United States are frequently impressed by what the defendant says in elocution, and isn't it difficult for a panel on a cold record to say, well, the district judge, Judge Martin here, abused his discretion by crediting the elocution because five months earlier he had one positive test for cocaine. Well, so if his elocution includes inaccurate information, which it did, that he'd been sober for almost three years. Also, the notion that Judge Martin articulated that he was not the typical child porn offender in his mother's attic. Well, no, he wasn't in the attic, he was in the house. I mean, the notion that he had a job, that was in the pre-sentencing report, that was not new. The video from the employer, the letters from family, everything the judge started to talk about, he'd already seen. If the judge had come out and said, I'm going to impose 72 months, and then that was We'd be getting an appeal from the defendant saying that he was denied the right to elocute because the judge had already announced his sentence before he was given that opportunity. So we have to allow for, we want the district court to listen to what is said and to not make up his or her mind based on what they read before they come on the bench at sentencing. I mean, the Constitution requires that they have an open mind and listen to, and make the right of elocution meaningful, right? Absolutely, and I don't disagree with that, Your Honor. What I disagree with is that the district judge actually articulated any justifiable, rational reason for going from 72 to zero. Well, that's a different argument than what you've been making. What you've been making is that you don't agree with how the district court weighed the stuff that the district court heard, and that we shouldn't agree with the weighing of those factors either. Well, I'm not making an argument just that we disagree, Your Honor. I'm making an argument that it's not justified if his reasons are sobriety, and there's proof that there was not sobriety. If his reason is, and one that he If this is a, if you're successful in your conditional plea, I will put you in jail for time that you don't deserve to serve. Well, that's, to be delicate, that's almost nonsensical. The judge earlier in the hearing had said, I realize the plea agreement, the government has agreed to let you remain free on bond during appeal, and I accept that. He also knew that the issue that was going to be appealed is the playpen search warrant issue. Workman had been decided nine months before the sentencing hearing. There was not going to be success on this appeal. Well, they could have filed for cert. I don't know if they did, but, you know, I mean, it hadn't been, it wasn't over yet. Right, but my point being Let me stop you for a minute. One of the reasons that the district court gave is disagreement with the sentencing guidelines with respect to possession of child pornography as opposed to distribution. And you actually submitted some charts and a report, and in that report, it's pretty clear that judges all over the country have problems with the guidelines on possession, and in fact, your charts showing sentences for possession actually show instances where they're given no time, no prison time. It's not the average sentence, but it does happen. So when you say that he had multiple images, used a computer, he had young children, all of that, what this report that you attached is showing is that that's the run-of-the-mind possession case of child pornography. These things that are enhancing the sentences, there's a real question of whether they should be, and the judge referred to that. I mean, is that a reason that he didn't abuse his discretion here? Well, he referred to that in going to 72 months instead of the government's initial recommendation of 98 months. The government was willing to accept the 72 months, but there was nothing new. He didn't suddenly recognize that information and say, wait a minute, this really should be zero months. Well, what if Judge Martin just decided that he had made a mistake? I mean, I don't understand how you can fault a district judge for changing his mind. We all change our minds all the time. He can change his mind, Your Honor, and I think the government could see him going to a lesser term of imprisonment than to go on probation in this case, again, based on the reasons he gave. Well, but specifically on Judge, I want to follow up on Judge McHugh's question. We know that Judge Martin put that in the J&S, that that was one of the reasons. I doubt it was you, but one of your subordinates in the sentencing memorandum, prior to the sentencing, started out the sentencing memorandum, apparently this has happened before with Judge Martin with you all, and started saying, before the judges obviously had the sentencing, we know you disagree with the sentencing guidelines for child pornography, but here's our spiel, we're going to try to change your mind. So we know that the judge was sincere. What we don't know, that we have to reasonably assume, that the district judge gave considerable weight in the ultimate determination to give five years probation, based at least to some, maybe great weight, based on his disagreement with the guidelines for child pornography. He certainly consistently has expressed his disagreement with the guidelines, but again, the government's view is he took that into account when he came out saying, 98 is too much, 72 would be fine. He did not then say, you know, I've further reflected, and I really think probation is appropriate in light of my disagreement with the guidelines. That was not his rationale. His rationale was, I don't want to put you in prison while you have an appeal, which you might win. He states that twice, and he says at one point, he says on page 283 of the appellate act, I can tell you were this not a conditional plea, I would have been more inclined not to place you on probation. But he knows this defendant is not going to jail while his plea is pending. So that reason simply does not justify the end result. I also would suggest that if you look at the 3553A factors, I know he considered them, but is this just punishment? Does this deter others from this kind of misconduct or even Mr. Cookson? What's the minimal substantive reasonable sentence for Mr. Cookson then? Well, that's within the, at some level, the judge's discretion. The government's view would be it should be a term of imprisonment. Obviously, I suspect if he says 12 months, we don't win a challenge to that. Some term of imprisonment. Some term of imprisonment. But to go from 72, which was already a variance, down to zero, it's the zero that frankly I think gives us the basis for this appeal. There's no statutory minimum sentence for this crime, is there? No. So does that reflect that Congress didn't think that there should be a requirement that there be some prison time? Well, and it certainly allowed some discretion. But again, there may be discretion. You have a first-time offender who has a couple of images and they're close to the border between teenage and actual adult images or something. This is not this offender. He has thousands of images, hundreds of videos. He has prepubescent children. He has bondage, has the SM territory. He went to communities, three different websites. He requested something on at least one of those websites from other members of the community. He was caught by his family in the basement computer, not the attic computer. And a week later, he was back to it. So this is not the kind of offender that I would submit Congress had in mind for a probation sentence. There may be some. What about a kidnapper? I thought you might ask about that. Apparently, there can be kidnappers who are justifiably given a probation sentence. So how do you distinguish DeRusse? I distinguish DeRusse because I don't think there the judge was mistaken about any of the facts underlying that. He just took a very lenient view of the situation, more lenient certainly than I would have or at least some members of this court would have. But there was no mistake about the facts, and he articulated reasons that at least were rational for that result. Isn't that, and I think it's safe to say that our cases on procedural reasonableness and substantial reasonableness sometimes are hard to differentiate. But your argument in differentiating DeRusse and a little bit of your criticism of Judge Martin sure sounds a lot like a procedural reasonableness challenge. Well, I think, Your Honor, we're not, the way I distinguish it in my mind for what it's worth is I think of the procedural as the calculations and the explanation. He gave us explanations here, so we're not bringing a procedural challenge. But our point is his reasons don't hold water. They do not justify a sentence of probation, and that's a substantive challenge. We're not asking him to go back and give us more reasons. We just think the reasons he gave don't justify this result. Given some of those cases, what would be the substantive reasonableness case that you would ask us to rely on to you in your favor? Oh, I think it's the Walker case. I thought you might like Walker. It was a brilliant opinion. It was brilliant, absolutely, as was Workman, if we get to that issue. No, unless the court has further questions. Well, what about Walker 2? Pardon? Walker 2. Have you looked at Walker 2? I have not, no. Is it out? It might not be out yet. Sorry. Stay tuned. Stay tuned. So it's safe to say I've not seen it. Consider that just the teaser. Unless you have further questions, I'll sit down. Thank you. Mr. Hansmeier? Judge Kipcovich, and may it please the court, my name is Dan Hansmeier. I'm the fellow chief of the Office of the Federal Court of Inquiry for the District of Kansas, and I'm here on behalf of Daniel Cookson. For me, this case is conceptually difficult for two reasons. One, and I think Judge Becker, I think, just picked up on this, is the government's litigating position, because I do think the government's chief complaints are procedural in the sense that they're complaining that there were facts that they think were relied on that were wrong. And I think that's frustrating because there is a doctrine that covers that. In 1948, the Supreme Court decided Townsend v. Burke that said that when the sentencing court relies on erroneous facts and those facts are material to the outcome, the defendant gets resentenced. The court extended Townsend to the federal sentencing context in Tucker about 30 years later, so now we have the Townsend-Tucker doctrine. It's an established doctrine that exists. I've won cases under it, but the government doesn't pursue it here. And so you kind of have to take what the district court might have done wrong, and I certainly wouldn't concede that because, like I said, the Townsend-Tucker claim has to be material, and there's clearly debate in here whether what the district court said that might have been wrong is material. But we can't argue that because the government didn't raise it. And on top of that, a lot of what the government relies on is this explanation of the sentence. They don't like the explanation, but we know from Gall that that is a procedural component of the sentence. So again, we're here on these claims made by the government that really sound and procedural and reasonable to me. But we do have cases that say that the substantive and the procedural are not as neatly separated as we might like. And, you know, we're faced with the task of appellate review of a decision of the district court, which typically requires us to have a record that tells us something about why the district court did what he or she did, right? Correct. And so to some extent, when you're saying that the district court did not adequately or inaccurately explain what it did, it sort of bleeds over into our substantive review of the sentence, doesn't it? I think that's true. That's certainly what Barnes says. I know Judge Bacharach has a dissent there where he does draw a more fine line between procedural and substance. But the way I read Barnes is essentially, and reading Barnes on top of the cases that came before it, is that the sentence that... I think Barnes is correct in saying that you can't ignore the reasons for the sentence because you're trying to determine whether a sentence is too short. That's what substantive reasonableness is. Is the sentence... Is the ultimate outcome wrong? Not the procedure to get to it. But in determining whether an outcome is wrong, I mean, it makes sense to look at the procedure. It's there. It's part of it. But it's not... But because the government is here on substantive reasonableness, we have to look beyond those reasons. It's a holistic inquiry and it's just not... It's a procedural case and that's not a reason to vacate and remand the sentence. And I think when you look holistically, in light of the precedent, this Court's substantive reasonableness precedent, there are really good reasons not to vacate this sentence. And I think the facts... Well, what's the test? When we're looking at it on appellate review of whether this sentence is too short, what's the template? What's the measurement tool we use to decide, yep, this one's too short, this one's not? What are we looking at? So I don't know that there is a really good, you know, a really well-defined test. I think it is... You know, it's rooted in the 3553A factors and what happens. Well, if you read Judge Bacarach's series of opinions that he's authored, there's a pretty good road map in that regard. One of them would be whether the sentence is an extreme outlier. And isn't that what we have here? No, absolutely not. I don't think this is an extreme outlier at all, to be honest. In a child pornography possession case, to get probation isn't, I don't think, that big of an outlier at all. I think, especially when you look at the facts... Is that an empirical answer? I mean, can you flesh that out a little? I think there are... You know, we know from the Commission's report that we're relying on these cases from 2012 because their sentencing was in 2015. But, even since then, when you look at the most recent report, district courts consistently go below the guideline. Well, that's a... That'll make it... But that's a different answer, I think. I mean, it does answer the Chief's question. But here we have the record shows that the average for possession of child pornography is prison for 70 months. Right? That was the government's statistics, yes. And if I scour the record, I'm not going to find any contrary evidence presented on behalf of your client. That's the only evidence that we have under 3553A6 of a nationwide average, right? I think so. And if we also look undisputed, at least in terms of the evidentiary record, we have seven specific examples that the government has presented and presented to Judge Martin of possession of child pornography and none of them got anything close to this. All of them got substantial prison time. Right? For possession. Right. The cases the government... And six of the seven had a lower guideline range than a floor of 91 months than this defendant had. Right? So if we look at 3553A6 and we evaluate based on the evidentiary record that we have, how do we do anything other than saying at least this factor, which I think we have lent days in other cases that say this is a very important factor that this weighs heavily in favor of finding an abuse of discretion. Well, I don't think that's right. I don't think it weighs heavily because... But it does weigh for the government, though, does it not? Well, I mean, any time you have a sentence that is outside the guidelines range that factor is going to weigh against the sentence. I mean, it's that simple. Because the guidelines exist to, you know, get rid of disparities, but we necessarily, post-Booker, have sentencing disparities and we have them at a really high rate in this context. So... But hasn't the Supreme Court in Gaul told us not to treat a downward variance that way? That we're not supposed to see that as weighing against the substantive reasonableness of the sentence? In fact, I think they said when we review a downward variance from the recommended guidelines range as we do here, even more solicitude to the sentencing court is appropriate. Yeah, I mean, that's exactly right. That's what Barnes says. I'm looking at Barnes right here and what you just said is in Barnes. A downward variance is based simply on the district court's discretionary authority to consider the nature and circumstance of the offense. Yeah, I mean, you're exactly right. When it comes to a downward variance, district courts are given even more discretion. So what does that mean? Does that mean that if a sentencing judge is well aware of what the guideline range is, well aware what the national averages are, looks at the pre-sentence report, looks at all the recommendations, but just has a gut feeling that if I take a chance on this defendant, it's going to be a good bet because he's going to turn his life around. I mean, is that allowed under the sentencing guidelines? I think you can make an argument that it should be. I mean, I think there are, you know, I think you can make a very good argument that substantive reasonableness shouldn't exist. We have an Eighth Amendment for these things, but we do have substantive reasonableness. I think it is difficult to draw the line, but I, so let, I do want to, let me make one point real fast while we're on this idea of sentencing that the government said maybe 12 months would be okay, but let's think about that. So, because this is a probationary sentence, and I think this is important because the consequence of violating probation is not like supervised release where you have this minimal term of imprisonment that can be imposed. You can be put in prison for the length of the underlying terms, and in this case that's 20 years. So, Mr. Cookson has five years to behave himself, and if he doesn't, he could go to prison for a really long time, and that actually happens where district courts put people on probation and then, you know, given the stat max we had a case in Kansas City. But, if the sentence on remand, let's say, is 12 months plus a term of supervised release, he is going to max out at something probably around, it's just possession, I think he could go to prison for a total of five years if he's provoked. So, to say that this term of probation is less serious than like a 12 month term of imprisonment, I don't even really know that that's accurate to be honest with you in light of the consequences of violation. Hasn't, didn't he already commit a parole  Mr. Cookson at some point? The pre-trial condition. The pre-trial condition. The positive cocaine. Use of drugs. He was using drugs. I mean, he clearly had, you know, that's another sort of angle on this case is that he was injured when he was a teenager and he got addicted to opiates and sort of just been using drugs ever since then. And I think Judge Martin, you know, that's a factor that could go either way. Judge Martin is free to weigh that however he wants. And I think when you look at what Mr. Cookson did, the case is interesting in the sense that the offense was committed in 2014. They learn about it in 2015. They interview him. So early 2015. They interview him. Summer 2015. They do the forensic fall of 2015. They don't indict him. And he's released. He's free. November 2015. They don't indict him until June 2017. Which kind of undercuts the idea that he needs to be in prison. But anyway, so his rehabilitation is not from the point of indictment forward. We're talking about from November 2015, when he gets out of prison on the parole violation. He really did turn his life around. He moved to Colorado. He got out of small town Kansas, which was a problem. He got a job with this  He turned his life around. So I don't think it's accurate when the government says in this brief that rehabilitation is just compliance with bond conditions. That's not even true. We're talking about someone who actually turned their lives around. To differentiate the case from Walker, that's exactly what happened in Walker. The district judge said 33 days time served is reasonable because this person has gotten off drugs. In this case, Judge Martin said this person has turned his life around because he got away from his family. He gets a job. That's all there is. He got a job. He got away from the family that admonished him for looking at child pornography. That's all the district judge relied on. He didn't want him to go to prison if Workman was going to get overtired. He told him he was going to be out of bond. The judge's explanation doesn't make sense. On this type of abuse of discretion review, you are free to disagree with Judge Martin. At the end of the day, you have to give deference to Judge Martin. I think what he did in light of the facts of the case is within the bounds of permissible choice. Just like this court said, we probably wouldn't have given this person a time search to do. And I think Judge Martin is a district court judge who takes his time to figure out what to do in these cases. A lot of times the government doesn't like it. I think that's part of the reason why we're here. It's tough to keep losing. I know that. It feels good to be on that side of the room, doesn't it? So I think the prosecutor maybe just doesn't want to and I think Walker was a career offender. He was a serial bank robber. I mean that case was just so out of the ordinary. I think it's hard to argue with the decision Walker because in this freedom case these are serial bank robberies and they are like  committing bank robberies and armed. Right? Yeah. So that is those cases are just complete outliers. There's nothing wrong with the court's decisions in this case. But when you look at the entirety of this court's precedent we think this sentence I don't know I guess the last thing I'll say is I don't know how you write a decision reversing vacating or manning this decision when you look at the two cases at the end of the day if DeRus is fine and it's a discretionary decision that this court should uphold. Thank you counsel. Did Mr. McAllister have any rebuttal time? Your Honor he has 12 seconds. Give him a minute if he wants to. Okay. Thank you Your Honor. I would just point the court to Freedman and Walker and remind the court that Freedman was a case where the district judge basically said I have a feeling that you're going to do better so I'm not going   better than you're going to do. I would also point the court to 3553A6 the need to avoid unwarranted disparities in sentencing and I would our brief on page 16 those other cases that are very similar to this one this would be a drastic disparity from the sentences given in those cases so the government would ask that you reverse and remand the directions to Judge Martin that he impose some term of imprisonment on Mr. Cookson. Thank you very much. Thank you  Thank you. Thank you counsel. Thank you. Thank you. Thank you. Thank you. Thank you.